Madam Clerk, please call the first case. Good morning, Your Honors. My name is Carl Mott. I'm from the Office of the State Appellate Defender and I represent Juan Garcia. Good morning. I'm Assistant State's Attorney Lori Rosen. Counsel, you need to speak into the microphone. I'm sorry. I apologize. I'm Assistant State's Attorney Lori Rosen on behalf of the people. Okay. The microphone is for recording purposes. It does not amplify your voice. Good morning and thank you. Thank you both. Counsel, please proceed. May it please the Court. Your Honor, may I please reserve three minutes for rebuttal? Sure. I'd be happy to answer any questions on any of the issues raised in the briefs, but I plan to focus my argument on the two ineffective assistance of counsel arguments. Your Honors, we're here today because Juan Garcia was denied the right to a fair trial. He was not provided the effective assistance of counsel. First, defense counsel was ineffective for agreeing to the admission of inadmissible and prejudicial other crimes evidence. In order to admit other crimes evidence, the threshold question is whether a crime was committed and whether the defendant was involved in that crime. In this case, the State conceded that Juan Garcia was not connected to the theft of the truck. Therefore, the evidence relating to the theft of the truck was not admissible for any purpose. Under a recent decision from this Court, People v. Pikes, where the State is unable to connect the defendant to the prior offense, the evidence of other crimes is not admissible for any purpose. And as I stated, because the State conceded in their brief, and I quote, no witness or prosecutor ever linked defendant to the theft of the truck, unquote. In this case, the evidence relating to the theft of the truck was not admissible for any purpose. And moving on to the first prong of Strickland. Defense counsel was provided unreasonable assistance because the evidence of the theft was inadmissible, and his decision to allow the State to bring it in without objecting simply cannot be considered reasonable trial strategy. For a defense attorney, sound trial strategy requires counsel to use the rules of evidence to avoid the admission of prejudicial evidence whenever possible. In this case, because the evidence relating to the theft was inadmissible, his decision to allow it in simply cannot be considered reasonable trial strategy. After opening statements, in opening statements, the State's attorney referred to the truck as stolen. And then after opening statements, the trial judge pulled the State's attorney and the defense attorney into chambers and asked defense counsel why he was not objecting to this other crimes evidence. And defense attorney explained that in his mind it was a strategic decision because he was presenting an alibi defense, and so he did not want to draw attention to the theft of the truck because it was his position that Juan Garcia was never in the truck. So he didn't want the jury to focus on the theft of the truck and essentially in their minds connect Garcia to the theft of the truck. The problem with this strategy is that the evidence relating to the theft of the truck was simply not admissible, and the jury never would have heard any of it but for his agreement with the State to allow it to come in. And in this case, the evidence of the theft of the truck was highly prejudicial to Mr. Garcia. In this case, the judge gave the other crimes instruction IPI 3.14, which in most cases that's meant to instruct the jury on the limited use of that evidence. However, in this case, the instruction actually compounded the prejudice to Mr. Garcia because it specifically told the jury that there was evidence connecting Mr. Garcia to the theft of the truck when in fact there was no such evidence presented. The instruction was worded, I quote, evidence has been received that the defendant has been involved in an offense other than that charged in the indictment, unquote. However, as the State conceded in their brief, no such evidence was presented ever connecting Mr. Garcia to the theft. And the reason this was a problem in this case is because... Let me ask you, let me stop you just for a second. Isn't there a distinction between connecting with the theft of the truck and connecting with possession of a stolen motor vehicle? Two distinct offenses. They could be two distinct offenses. However, the State at the trial level never argued that possession of a stolen motor vehicle was the other crime that was being referenced. It was always in reference to the theft of the truck. And moreover, simply being a passenger in a stolen vehicle with no other evidence is not enough to support possession of a stolen motor vehicle with no evidence as to knowledge or control of the truck. He was simply a passenger, as all any witnesses ever testified to. And in this case, allowing the jury to make the connection between Mr. Garcia and the theft devastated his alibi because Mr. Garcia presented three witnesses who testified that he was at home sleeping at the time of this offense. And if the jury believes that Mr. Garcia was connected to the theft, it makes it much more likely that he is then the person getting into the truck later. Essentially, it shows some kind of advanced planning or at least opportunity because he had already procured a getaway vehicle. However, without the evidence of the theft, his connection to the truck is much more limited and only comes down to a couple of witnesses who state that they saw the shooter get into the truck at the end. And in addition to the other concerns with other crimes evidenced in usual cases, such as that the jury may simply convict him because he has committed other offenses and is a bad person who is more likely to commit the current offense. Counsel, clear something up for me. Was it improper for the state to discuss the truck or to have a witness discuss the truck? Because the alleged perpetrator was seen fleeing from the crime in a truck, so they could discuss the truck, correct? The fact of the truck itself is relevant, yes, because it was the alleged getaway vehicle from the shooting. But they could not discuss the theft of the truck. That's your position. That's correct. The theft of the truck has absolutely nothing to do with the shooting or proving who may have been guilty of the shooting. The theft of the truck was an independent crime that occurred a week or so before the shooting, and as the state conceded, they presented no evidence connecting the theft to Mr. Garcia or to the shooting itself other than the fact that it was the same truck. I'm going to move on to the other ineffective assistance for counsel argument. Here, defense. Let's talk about this a little bit more. Let's assume that it was a mistake for the defense counsel not to have objected to that other crime's evidence. You still have two eyewitnesses who put the gun in the defendant's hand shooting the victim in this case. So how can you then conclude, or can we conclude, that there's a reasonable probability that there would have been a different result in this case? Well, because in this case, Mr. Garcia presented three alibi witnesses who stated that he was at home asleep at the time. And the state presented two witnesses who, as you stated, identified him as the shooter and placed him in the truck. And at that point, it essentially comes down to a credibility determination for the jury, whether they decide the alibi witnesses or the two witnesses who placed him in the truck. And the evidence of the theft unfairly allows the jury to, as I stated, connect Mr. Garcia to the truck before the shooting happens, which makes it much – if you assume that Mr. Garcia was involved in the theft of the truck, it makes it much more likely that he was the person getting in the truck, as the two state witnesses – state's witnesses said. However, if you have no evidence relating to the theft of the truck, all we have is a couple of witnesses who say, I saw him get in a truck and it drove away. But what's – explain to me, in your judgment, what's the significance of – the greater significance of the fact that the truck was stolen in light of the fact that the defendant takes the position of, I wasn't there, I've got an alibi, I don't even know about this truck, I don't care if it was stolen or not stolen, I don't know anything about it. I was at home, as my three alibi witnesses will attest to. And that's exactly the point, is that if you believe the alibi witnesses, Mr. Garcia was never in the truck, had nothing to do with the truck, so the fact that it was stolen is completely irrelevant and immaterial to this case. And so allowing the state to bring in evidence that it was stolen and the jury instruction informing the jury that he was connected to the theft makes it relevant when it is, in fact, not relevant and not material to this case. It confuses the jury and adds an issue that was not important for them to decide, in this case, to determine who was guilty of the shooting. I think you still have an issue with the second prong, though. The reasonable probability of the result would be different because, as the defendant says, it's irrelevant. So if the truck was stolen or not stolen, I don't know anything about it. My DNA is not in the truck. My fingerprints aren't in the truck. There's nothing that connects the truck to me. Except the problem is the jury instruction told the jury that he was connected to the theft when there was no evidence to support that. The jury instruction specifically informed the jurors. Well, there's the state's witnesses who say he fled in that truck. That's what connects the truck. I mean prior to the shooting. I'm sorry, Your Honor. The jury instruction specifically told the jurors that he was connected to the theft in the truck, which was before the shooting, which, as I said before, it could show advanced planning or at least that he had procured a getaway vehicle in advance of the shooting, perhaps, which, again, makes it much more likely that he would then be the person getting in the truck after the shooting. However, if there is no evidence of this theft, all the jurors hear is he got in the truck when the shooting was done. And it's a much more limited connection, and it gives his alibi witnesses much more credibility or at least it doesn't change their credibility, but without knowledge of the prior theft, the alibi is much more believable because there's not this other. Well, if he stole it, then, of course, his alibi is false. If there is no evidence of him being involved in the theft, his alibi is much more plausible because at that point we have two witnesses who say he got in the truck  Concerning the state's witnesses, in your opinion, upon review of the record, was their description of the shooter consistent? Well, four witnesses observed the shooting, and two of them were not able to make any identification of the shooter. The two who did identify the shooter, their descriptions were consistent of a heavyset Hispanic man, and both of those were consistent with each other. The state's witnesses testified that this person who fired the weapon had a red piece of clothing, jacket or hoodie. Yes. Is that correct? Yes. It's my recollection that a red jacket was recovered from the defendant's bed. It was not in his bed. Or somewhere in the home in which he was arrested. Yes, it was hanging on a coat hook in the home where he was arrested, yes. Now, someone else accepted ownership of their jacket? Yes, that's correct. And there was gunshot residue conducted? Yes, there was. And the results of that was? The results of that were inconclusive. That brings me to my next point. As you said, the red jacket was found on a coat hook in the home where Mr. Garcia was arrested. The police took that jacket and took it to the police department, and it was tested for gunshot residue. The expert testified that he found one three-component particle, which is a particle that contains lead, barium, and antimony all fused together in a single particle, what he referred to as a unique particle. And he testified, however, that in order to consider his test positive for gunshot residue, he had to find three of these particles. However, he only found one particle, so his test was inconclusive. And his ultimate conclusion was, quote, the areas I sampled may not have contacted either an object or a person who had come in contact with primary gunshot residue. Quote. End quote. In this case, based on that conclusion, counsel was ineffective for failing to investigate the science behind gunshot residue and impeach the gunshot residue expert and point out the weaknesses in his testimony. As I just said, his conclusion was inconclusive, and he stated that the jacket may not have contacted gunshot residue. That is all that defense counsel elicited from the expert. However, there was much more that he could have elicited to point out the weaknesses in his testimony. Specifically, this expert, Scott Rorschewitz, was the co-author of a study conducted in, it was published in 2007, in which they studied Chicago Police Department vehicles and facilities of the presence of gunshot residue. In that study, they took 201 samples from locations that had not been exposed to the discharge of a firearm and therefore should not have any gunshot residue. And of those 201 samples, 23 of those samples showed a total of 56 three-component particles, which translates to approximately an 11 percent chance of finding at least one three-component particle where there should not have been any. And this source of possible contamination is something that defense counsel should have brought out, particularly in this case where a single particle was found on the jacket. The expert testified that gunshot residue particles. How would you characterize the expert's testimony concerning the gunshot residue? His testimony was inconclusive, and he found a single particle that is consistent with gunshot residue. However, as he stated, he needs three in order for it to be a positive result. Would you think it was damning to his case? Oh, absolutely. To the defense case? Absolutely. The gunshot residue expert's testimony was very damaging in this case because as an expert in testifying about scientific testimony, that carries great weight in the minds of the jurors. What did he say about it? He wasn't able to say positively that there was evidence of firing within the area of the garment. Is that correct? That's correct. He said his test was inconclusive. It was not positive. However, he also testified that the only place that these particles come from is the firing of a gun, which, as I pointed out in the brief, is simply not true. The FBI had a symposium of gunshot residue experts from throughout the country, and in that summary, they discussed a variety of studies in which they found three-component particles in brake pads and fireworks, and as a result, they cautioned scientists against using the term unique when referring to these particles coming from gunshot residue because they're now finding them in things that are not gunshot residue. And so while he said it was inconclusive, he also testified that the only place these particles come from is gunshot residue. And in a juror's mind, when they hear that, well, okay, it may not be a positive test, but where else would this particle come from except the firing of a gun, based on his testimony? And counsel failed to draw out the fact that these particles are not unique to gunshot residue and that that statement was incorrect. And so he allowed the expert's testimony to have much more weight in the juror's minds than it really should have. He did not point out these weaknesses. Additionally, as you pointed out, the defendant's aunt testified that the red jacket was her jacket. She was wearing it that day and that Juan Garcia never wears her jacket. And however, in closing arguments, the state argued that her testimony was unreasonable because of the presence of this single particle. The state argued that the presence of this particle showed that that jacket was around the firing of a – the discharge of a firearm. However, the expert's testimony said that the areas he sampled may not have been in the presence of gunshot residue. And had counsel drawn out these weaknesses in the expert's testimony and the inconsistency – and the possible source of contamination from the Chicago Police Department facilities themselves, the jury would have had a more complete picture of the actual probative value of the expert's testimony in this case, which is minimal if you look at the actual science behind it. And this was very prejudicial to Mr. Garcia because this was the only physical evidence purportedly connecting him to the offense. As you stated previously, the truck itself had no – none of his fingerprints. It did not have his DNA. And there was no other – the weapon was never recovered. There were no fingerprints on the shell casings. So this was the only physical evidence purportedly connecting Mr. Garcia to the offense. And counsel allowed the jury to believe that the expert's testimony was essentially conclusive, where it simply was not. Unless Your Honors have any more questions, I have nothing else. Thank you, sir. Thank you. Your Honors, the proof of other crimes evidence that counsel spoke of is completely and was completely relevant during the trial. The case involved a shooting and the defendant getting into a moving truck that was highly identifiable by the graffiti and other elements of it. It was a stolen truck that the defendant was driving. The suspect then fled the scene southbound on Carlisle and ended up a few blocks away, which was also a block or two away from the defendant's home. The fact that the car or the truck was stolen is completely relevant. When the investigation was going on and the police arrived at the scene of the shooting and they're trying to figure out who the shooter is and they have this description of the shooter and they have a description of the vehicle that was used to flee and then they go and find that within a half an hour or so, they're trying to figure out the identity of the truck to see if they could figure out who the shooter is. Did you have any evidence to connect Mr. Garcia to the theft of the truck, counsel? Absolutely not. And it was never argued. It was never discussed. It was never alleged at all at any point during the trial that the defendant had anything to do with the theft in this case. But it doesn't matter. Isn't that a condition preceding to the introduction, proof of other crimes? No, Your Honor. Not in this factual scenario. The defendant was in a truck, was seen after shooting two people get into a truck and flee. He was either a passenger or a driver in that truck and it was a stolen vehicle. That in and of itself could be a crime. Are you talking about two crimes in this case, a murder and the theft of the truck? No, we weren't the trial attorneys. No one at the trial level was focused on the truck at all in terms of the fact that it was stolen. It was merely a description because the truck was indeed stolen. Why did you call it other crimes evidence if the other crime wasn't important to this case? We didn't call it other crimes evidence, Your Honor. I believe that the judge held a sidebar during the trial and addressed it as other crimes evidence at that point. So there's no issue with respect to other crimes evidence? Our position is that it's part and parcel of the offense itself. The defendant got into a truck and fled the shooting. So the fact that the truck was stolen was not honed in on. It was not argued. It was not a focus of the trial. It was merely what the truck was. And the defendant now can't sanitize the truck and state that we're going to talk about the truck, but we're not going to acknowledge that it was stolen, especially in a case like this where the defense was alibi. So the defendant is saying, I wasn't there, it was somebody else. Well, the defense then can go blame the shooter. I mean, the driver is the shooter of the truck. So it was particularly important in this case to show the steps of the investigation and to rebut the alibi evidence to show that the shooter in this case was not the driver of the truck, but was indeed the defendant. How does that rebut the alibi evidence, the fact that the truck was stolen? Well, the fact that the truck was stolen links up to the identity both of the defendant and then the owner or the driver of the truck. How does it link up the identity of the defendant? Because the defendant, Your Honor, was seen getting into that truck, leaving the scene of the murder, going in a specific direction a few blocks down the street, leaving the car within a block or two of his home where they found him within a couple of hours. I get that, but how does the fact that the truck was stolen further that? How does it prove any of the elements of the offense? How does it go to the murder? It doesn't prove an element of the offense. It just links up the identity, and it shows the steps of the investigation when the police... Why is that important, the fact that the truck was stolen? Why is that important? It's important in that we're trying... the owner of that truck as a possible shooter or defendant in this case. So that's one reason why it was important. But it also goes when the police are investigating the case and trying to figure out who the shooter is, they would be remiss if they didn't figure out who the owner of the truck was. So they're linking up and finding out that the truck is stolen, and when they find out that the truck is stolen and then they're getting descriptions of the defendant... Okay, that's the police investigation. Right. Let's say, arguing, though, we give you that. Why does that process need to invade the testimony? What probative value or why do you think the police had to link up that portion of the police investigation? What bearing, what evidentiary value does that have to the question of who the shooter was? Well, Judge, I'm sorry, Your Honor, I apologize. That's okay. If the police, if that didn't come out at trial, then a door would be left open for the defense to argue about who the true driver or owner or whatnot of that truck was. So it's important to show that the police conducted this investigation. We're trying to take steps to figure out who the owner was, who the shooter was, and we're going through this process. The defense can't sanitize the truck now and say, oh, wow. In addition, the fact that the truck was stolen was just, it wasn't honed in on. It wasn't a big issue. It was mentioned one time in opening statements, and I believe it was merely stated that it was a stolen moving truck with writing on the sides. That was the comment that the prosecutor made. It was mentioned in jury instructions, which the jury is sworn to follow. It said, you know, you have evidence that the defendant was involved in this act. It was mentioned in closing. But also, is there anything to be gleaned or suggested from the fact that the trial court, on two or three occasions, raised questions about this testimony? Well, the trial court raised a question because the trial court knew that the appellate court focuses in on this type of issue and wanted to make sure that the record was protected. But I will state as well that this issue, whether or not trial counsel was ineffective, his trial strategy was really at issue. So regardless of whether or not this truck is stolen or not, the defense theory at trial was that they weren't there, they had nothing to do with it, and we don't care because the defendant wasn't around the truck, he wasn't at the shooting, he didn't drive the truck, and the defense advocated that theory by choosing not to object to this. They didn't want to highlight it. The defense attorney did not want to highlight this fact and draw attention to it. And there was an extensive conversation during the sidebar after opening statements where the defense attorney was extremely clear that this was a tactical decision and that he was choosing to support the alibi defense. I believe he specifically stated, why would I object to that when we're claiming that the defendant wasn't there? So clearly it's a tactical decision and a strategy that he was pursuing at trial, and it was very reasonable. There's no evidence at all that it was unreasonable. His whole theory and his whole process during this trial was to advocate the alibi defense. And he did so, and that was a choice, and much deference must be given to that strategy that the trial attorney decided to go forward with. Additionally, Judge, I'm sorry, I apologize, Your Honors. That's okay. I apologize. There was absolutely no prejudice shown whatsoever. Your Honors spoke of the additional witnesses that were in the case. There were four witnesses to this shooting, two of whom identified the defendant, identified the truck, identified the jacket, and the other two witnesses, although they could not see the face or identify the defendant specifically, gave an extremely consistent description of the defendant and identified the truck and identified the jacket, the red jacket. The two who you suggest identified the defendant, were they consistent in their statements, the time of the offense, as it relates to their testimony? Are you asking if they were consistent when they first reported to the police? Yes. They gave a description. Each gave a description to the police shortly after the incident. Were those descriptions consistent with what they testified to? Yes, I believe so. And they testified at trial and identified photographs of the truck and I believe the jacket itself. And that was all consistent and corroborative of the two eyewitnesses in the case. But that was in addition to the gunshot residue, in addition to the firearms evidence that was collected from the scene, showing that there was one gun use based on the fact that a few of the or a couple of the firearms casings matched each other and were fired from the same weapon. So that was all supportive as well. In addition, the officers testified and they testified about when they arrived at the scene and where they saw the truck parked and the identifications involved of the truck and of the defendant at different points during that day. So the evidence in this case was overwhelming and the defense has failed to show in any way that the defendant was prejudiced, even if it was considered error, which it's not our position that it was, by allowing the fact in that it was a stolen truck. Additionally, the defense used this evidence to support their theory. Again, the defense argued at trial that nothing in the truck connected the defendant to the murder. And that was a big piece of their argument and a big piece of supporting their alibi. They argued there was no DNA found in the truck. There were no fingerprints found in the truck. There was nothing at all found in the truck to match up the defendant to the truck itself. So they used that to their advantage at trial. So again, supporting the fact... Well, they used the existence of the truck, but not the status, not its stolen status. Correct, but nor did the prosecutor. The prosecutor didn't argue that either. It was merely described in terms of being a stolen truck because it was indeed a stolen truck. But no one argued that. But the instructions suggest he's connected to a theft when there's really no evidence to suggest connection of such. Well, the instructions actually don't mention any specific crime. It's just the instructions... Well, there's only one other threat that was suggested, right? Correct, but it's jurors who are receiving this evidence. And so if they're focused on the shooting and the murder, they're receiving this instruction as a general instruction as part of all of the pieces of law that they're receiving. And they're just told, and it's to protect the evidence and to protect the record and to protect their verdict, that they should not use anything that they heard in terms of any type of other instance or crime as anything but the circumstances leading up to the arrest. So it doesn't talk about that the defendant stole a car or the defendant stole a car two weeks ago or whatever that issue was. It merely tells them, use anything else that you heard about any other related incidents as part of the circumstances of this arrest. And that was what the instruction focused on. And it's interesting that that was what was given to protect the record, and the defense now is arguing that that somehow biased them. It's meant to protect the record in these instances. It's meant to protect if any instance of another crime is mentioned or comes out. And our position is that it did so in this case. So you agree with the trial strategy of defense counsel? Well, it's not that I agree or disagree. I think that defense counsel had a very reasonable trial strategy. His theory was alibi, and he sort of had the punch and get out. He went in, he tackled what he needed to tackle, he hit the issues he needed to hit, and he didn't harp on things that weren't relevant. And that was his theory. He was just going to support the alibi defense. And he did so. I mean, he went right in, and all of his points were geared towards the defendant wasn't there, which brings me to respond to counsel's next argument about ineffectiveness in regards to the GSR. The GSR, first of all, let me state that counsel in their brief in here puts a lot of emphasis on the study that was done by Scott Rockowitz. And that study was never part of the record at any point until appeal. And I submit that the court should not acknowledge that study or use that as part of the decision on appeal, because the court is not. Counsel, I, speaking only for myself, I agree. Thank you. Having said that, then the GSR evidence in this case, again, trial counsel went right in for it and honed in and repeatedly said over and over again, your results were inconclusive. And he made that point multiple times during the record when he was cross-examining Scott Rockowitz. He, again, made that point many times during closing arguments. And he just honed right in on the fact that it was an inconclusive result. Again, a very reasonable trial strategy. He went in for the alibi. The defendant wasn't there. He had an alibi for the jacket. The jacket wasn't there. The jacket was being worn by the aunt. So all he needed to do from his perspective was hone in on the inconclusiveness. And that he did. And his trial strategy was completely reasonable. And, again, should be given much deference. In addition, whether or not he cross-examined on this issue with the study that's now being brought up would not have changed a thing. He still, the main goal for his cross-examination and the biggest point, which he used and argued, was that the results were inconclusive. You can't get much better than that from a defense perspective. They used that at trial. That's what they honed in on. That would not have changed. His cross-examination tactics wouldn't have changed the outcome in this case. Your Honors, if there are no further questions, I would ask that you affirm based on all of our arguments today and those stated in our brief. Thank you. Thank you. I just have a couple of brief points, Your Honors. Sure. The State argues that the theft of the truck in the presence of Lotz's DNA was relevant in this case. But it simply was not relevant to determining who was guilty of the shooting. The State said that they wanted to preempt the defense argument that maybe the driver was the shooter or something like that. However, there was absolutely no evidence that Norman Lotz was the shooter in this case. And so the defense could not, in good faith, have argued that he was an alternate suspect in this case. And it would have been a ridiculously bad trial strategy for counsel to argue this based on the evidence that the State had that the truck was stolen and they had Lotz's DNA. And the defense was never going to argue that Lotz was the shooter because there was simply no evidence to support this. And this is – What about an argument? Let's say, I mean, the State argues that the status of the truck was relevant and important to exclude the owner of the truck as a suspect. What if in an argument they say we never heard from the truck owner? What about that? Well, I mean, the truck owner, it was not an issue until the State brought it in as an issue. But wouldn't that be – if there's no evidence as to the status of the truck, whether it be that it was stolen, wouldn't that open the door then for the defense to argue and close, we never heard from the truck owner, folks. What about that? How do we know that that – wouldn't that be logical that the owner of the truck was in the truck or drove the truck? I mean, what about that argument? Does it foreclose that then? Well, but not based on the evidence in this case because, as I said, the defense knew who the owner of the truck was and knew that he was not involved in this and they would not have argued that. And that's supported by the fact that all they ever argued was there was no evidence connecting Mr. Garcia to the truck. They could have said somebody else's DNA was in the truck. They didn't. The State brought in that evidence. And that was only – the State argues that they brought in the theft of the truck in order to explain why Lotz's DNA was there. However, the State had normal not to testify about the theft of the truck before the jury ever heard about his DNA. The DNA came in as a stipulation at the end of the State's case. So the State had a witness get up there and talk about how the truck was stolen, all about the theft of it, and the jury at this point had not even heard that his DNA was in the truck. All they heard was him talking about the truck being stolen. And only later, after other witnesses had come in, when it was separated in their mind,  So the State's argument that they used the theft to explain the DNA is simply belied by the trial record. And more importantly, the State additionally argued that the theft of the truck is necessary to show, quote, why no other forensic evidence was found in the truck that would link the defendant to it. But this doesn't make any sense. The fact that the truck is stolen in no way explains the absence of evidence connecting Mr. Garcia to the truck. All they wanted to use it for was, they introduced the issue of Lotza's DNA in the truck as a backdoor for them to get the theft evidence in, because now they had to explain why this other guy's DNA was in there, but the defense was never going to argue that Lotza was the shooter because there was no evidence to support that. The State... Yeah, but let's forget about the DNA of the driver. Let's say those cigarette butts are not in the truck. Wouldn't it be reasonable then for the defense to argue and close if there was no evidence as to the status of the truck that we never... Well, folks, we found a truck that was used as a shooter and the State never bothered to call the owner. How do we know who was really in that truck? Could have been the owner, the driver, whoever has access to that truck. Wouldn't we want to hear that evidence, folks? I mean, if there was actually no evidence as to the owner of the truck, perhaps. But in this case, defense could not have in good faith made that argument because he knew, defense counsel knew who the owner of the truck was and he knew that the owner of the truck was not involved in the shooting. And as an officer of the court, he could not have made that argument in good faith. It would have been unethical for him to do that when he knew that was not true. The State additionally argued that... Well, he knows that somebody made a claim the truck was stolen. He doesn't necessarily know that it was. Well, it's pretty clear that the truck belonged to this plumbing company in Bensonville. Someone stole it and ended up in Chicago. So, I mean, he didn't know who stole it. That's correct. But I want to address one other point. The State argued that the theft of the truck was relevant to the steps in the investigation. It may have been relevant to identifying the truck and where the truck came from, but it had nothing to do with the identification of Mr. Garcia. Not a single witness who identified Mr. Garcia said anything about the truck being stolen. The fact that the truck was stolen had nothing to do with the witnesses who identified Mr. Garcia. Norman Lahta was the only person who testified about the theft of the truck, and his testimony had absolutely nothing to do with the murder. And all of the witnesses who testified about the murder said absolutely nothing about the theft of the truck. They were completely independent crimes, and the theft of the truck had nothing to do with the murder. And finally, the State brings up that the study and the FBI summary I cited in my brief are outside the record. I would like to direct this Court to a recent decision out of the 2nd District, People v. Watson. In that case, it- Let me interrupt. State, did you- were you made aware of the appellate's reliance on Watson? No. And I raise that only because it came to our attention late in the day on- yesterday. Yes, I filed my motion to cite additional authority yesterday afternoon. That's correct. Well, I apologize for that. Counsel, you should have been served. I assume you have been. In Watson, it had to do with a partial DNA match. And in that case, the second- Counsel. I'm sorry. Unless the State has an opportunity to view Watson, we're not going to entertain it. I received a call yesterday afternoon saying my motion was allowed, so I assumed I would be able to discuss it today. If you don't want me to, that's fine. I have a copy of the case if the State would like to look at it. State, would you like an opportunity to respond? Sure. In Watson, the 2nd District Court looked to scholarly writings and scientific studies outside the trial record in the context of an ineffective assistance of counsel claim. And the court explained that defendant's claim was not precluded for being outside the record, because in that case, the outside materials were being used as a reference to show the availability of the arguments that defense counsel could have made. Those items were not being offered as evidence or saying that counsel should have introduced these specific items. It was merely as a reference to understand the background of DNA science in order to evaluate counsel's on-the-record performance and to understand why it fell short. In that case, the court determined that counsel's apparent lack of understanding of DNA evidence and the failure to expose the weakness of that evidence was found to be ineffective assistance of counsel. And with that, I have nothing else. And we ask Your Honor to reverse and remand for a new trial. Thank you. State. Your Honor, I haven't heard about the case. I was never given the motion, and so I'm not aware of it. I'm not sure how Your Honors would appreciate me. Would you benefit from seven days in order to prepare your written response? A written response instead of an oral response? Yes. Yes, please. Okay. All right. In that case, we will await your response. I take this matter under advisement. Thank you both. Thank you. We're going to be in recess for five minutes.